EBER B. WARD et al., Appellants, *v.* SAMUEL ARMSTRONG, Appellee.

APPEAL FROM COOK.

In an action on the case for injuries occasioned to one vessel by another, it is erroneous to instruct the jury that it was the duty of the officers of the vessel complained of (a steamer) to have the captain and second mate both on watch at the same time, if by that means a collision might have been avoided.
A steamer is only bound to be furnished with a reasonable and proper look-out, and because another vessel, which is in fault by not having proper signals, could have escaped a collision if an extraordinary watch had been kept on the steamer; the steamer is not therefore liable.
A schooner has no right to neglect proper precaution, and throw all liability on a steamer if a collision occurs, merely because the steamer has not used extraordinary vigilance to avoid accidents.

THIS was an action on the case brought by Armstrong, owner of the schooner Jane, against the Wards, who were owners of the steamboat Samuel Ward, to recover damages, occasioned by a collision between these vessels, on Lake Michigan. Plea, general issue and *similiter.* At December term, 1852, of the Cook Circuit Court, the case was submitted to a jury, H. T. DICKEY, presiding, and verdict and judgment for Armstrong for $537. The Wards appealed.

J. Y. SCAMMON and H. G. SHUMWAY, for appellants.

J. N. ARNOLD, for appellee.

CATON, J. Where a verdict is returned so manifestly against the clear and uncontradicted evidence, as in this case, the mind is forced at once to the conclusion that the jury have deliberated under a misapprehension of the law as applicable to the evidence, for it seems impossible that they could have misapprehended the evidence itself. As we may not disturb the judgment, because the verdict is against the evidence, it is unnecessary for us to enter upon an examination of the testimony, except so far as it is necessary to an understanding of the instructions given. Nor is it necessary that we should examine in this place the whole of the instructions. Most of them assert clear and unquestionable principles of law, about which there can be no dispute. To several it is objected that they contain mere abstract propositions of law, but unsupported by any evidence in the case to which they could apply. That is, there was no evidence before the jury tending to prove the state of case supposed in

the instruction, and upon the finding of which the jury were to apply the law as stated. Without examining whether this be so or not, it is sufficient to say that this court has decided, in the case of Corbin *v.* Shearer, 3 Gilman, 482, that a judgment will not be reversed because the court gave to the jury, as an instruction, a mere abstract proposition of law which is correct in itself, but which is not supported by the evidence in the case. It is more proper, no doubt, to refuse such instructions, as they can result in no good, and may be productive of evil; yet we are not inclined in this case to change the rule which has been thus laid down.

We think the twelfth instruction which was given for the plaintiff below, is very clearly erroneous. It is in these words : " If the jury believe from the evidence, that if the second mate of the steamer had been on board and on duty at the time, and that it was his duty at the time to be on the look-out, and that if both he and the captain of the steamer had been on the look-out on the upper deck, the Jane, in the condition she was, might by the exercise of proper diligence, have been discovered in time to have prevented the collision ; and that such collision was caused by their not being so on the look-out, then the plaintiff is entitled to recover." The evidence is, that the second mate was sick and on shore, and that the first mate was discharging his duties ; that the captain and the second mate had their watch together, and that it was their watch at the time of the collision ; that it was not their duty to be on the look-out at the same time; that at the time of the accident the first mate was lying down on the wheel-house to take some rest, and that the captain was on the upper deck forward and near the wheel-house on the look-out, and that that was a proper and convenient place for the look-out. The schooner was running up the lake under her foresail and jib, with a smart breeze nearly aft or on her larboard-quarter, at the rate of from five to seven miles an hour. The steamer was running in an opposite direction at the rate of ten or twelve miles an hour. The captain of the schooner saw the lights of the steamboat, when she was four or five miles off, and knew what she was. Winslow, who was a passenger on board the steamer, says he was standing by Captain Cooper, who was on the look-out on the upper deck forward of the wheel-house, and that the first they saw of the schooner was her sails three or four lengths of the boat off, and right ahead ; that the captain immediately ordered the helm hard starboard and stopped the engine. The jib-boom of the schooner struck the steamer on her starboard bulwarks. No light could be seen from the Jane till she was along-side of the

Ward et al. *v.* Armstrong.

steamer, and at the moment of the collision, when she showed a lantern in a man's hand. The four witnesses, who were on board the steamer, concur substantially in the same statement of the facts, and all the witnesses who speak on the subject, including a number of steamboat captains, concur, that one watch was a sufficient and proper look-out, and Captain Gager says that one look-out is better than two, for the reason, that one is apt to depend on the other. In the face of the uncontradicted testimony the court instructed the jury, that it was the duty of the steamer to have both the captain and second mate on watch on the upper deck, if in the opinion of the jury by that arrangement and with proper diligence the schooner could have been discovered in time to have avoided the collision. Such is not the law. The steamer was only bound to be furnished with a reasonable and proper look-out, and was not bound to be furnished with unusual and extraordinary means to discover vessels which, from their own carelessness and negligence, in not providing sufficient and proper lights, could not be seen except by the use of such extraordinary precautions. If the steamer was bound to have both the captain and second mate on watch at the same time, then it was equally her duty during the watch of the first mate to have had another watchman on the look-out with him. If she was bound to keep two on the look-out, in case that would have increased the chances of discovering the approaching vessel, then, by the same rule, she might have been required to keep twenty on watch at the same time, if thereby the chances of discovery would have been still increased. If two men upon the look-out were better than one, the jury might with equal propriety have concluded that twenty would have been better than two, and thus have required the steamer to have covered her decks with watchmen. But this instruction not only involved the necessity of extraordinary measures of precaution on the part of the steamer to descry other vessels approaching in the night, but that, too, irrespective of the carelessness or negligence on the part of the schooner to make himself visible.

The instruction says, if two men on the look-out, stationed in a particular position, could, with proper diligence, have discovered the schooner in time to have avoided the collision, then the steamer is liable, no matter what amount of carelessness might be chargeable to the schooner, in not showing a proper light, so that she might have been seen by an ordinary, reasonable, and proper look-out. The schooner had no right to neglect reasonable and proper precautions on her part for her own safety, and then throw the entire responsibility of the accident

upon the steamer, unless she had adopted extraordinary measures to avoid it. The schooner was running large before the wind, and was nearly as much under command as the steamer. She saw the other vessel several miles off, and might have given her a wide berth, and thus avoided the possibility of a collision; and under such circumstances the law will not shift the responsibility from the negligent to the reasonably vigilant, for the want of unusual and extraordinary precautions. The instruction was wrong, and should not have been given.

Some of the other instructions, when taken by themselves, were also wrong, and might be sufficient to account for so extraordinary a verdict, could we find nothing else in the record to mislead the jury; but as it is, it is unnecessary to examine them in detail. In the main, the law was no doubt correctly expounded to the jury; but the error in giving the instruction specified requires a reversal of the judgment without looking further.

The judgment must be reversed, and the cause remanded.

*Judgment reversed.*